# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| EMMANUEL S. TROTTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| VS. | ) | No. 1-04-1075-T-An |
| | ) | |
| | ) | |
| SAMANTHA PHILLIPS, | ) | |
| JAMES H. SMITH, M.D., and | ) | |
| CORRECTIONAL MEDICAL | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

---

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Emmanuel S. Trotter, an inmate at the Northwest Correctional Complex ("NWCX"), filed a complaint, *pro se*, pursuant to 42 U.S.C. § 1983 alleging that Defendants demonstrated a deliberate indifference to his serious medicals needs by delaying in arranging and/or providing his prescribed medical care for a complete tear of his right Achilles tendon. Plaintiff also asserts various state law claims. Defendants James H. Smith and Correctional Medical Services ("CMS") filed this motion for summary judgment. Plaintiff responded. For the following reasons, Defendants' motion is GRANTED.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79 (a) FRCP on _3/05/05_

I. Facts

On May 1, 2003, Plaintiff ruptured his right Achilles tendon while playing basketball at the Northwest Correctional Complex. Plaintiff asked for medical care and was taken to Baptist Memorial Hospital in Union City, Tennessee on May 6, 2003. Dr. James H. Wolfe performed a magnetic resonance imaging ("M.R.I.") on Plaintiff's right lower leg. The M.R.I. showed a complete tear of Plaintiff's right Achilles tendon. Dr. James H. Smith, a physician for CMS at NWCX, ordered Plaintiff to be sent to Nashville General Hospital to treat his injury.[1] Plaintiff also told Dr. Smith of pain and numbness in his right hand. Dr. Smith informed Plaintiff that he believed that his pain was caused by a ganglion cyst and was urgent.

On May 7, 2003, Plaintiff was taken to Nashville General Hospital and was seen by Dr. Mauro Giordani.[2] Plaintiff was given the choice of surgery to repair his tendon; however, he elected to enter non-operative treatment. Plaintiff was advised that even if the prescribed treatment was executed properly, there would be a risk of poor healing, re-

---

[1] Pursuant to TDOC Policy # 113.12, a "[c]onsulation by a physician specialist or other health professional, as well as any prescribed treatment, shall be made available when it is determined that an inmate requires specialty care beyond the training or expertise of the institutional health care staff or institutional resources."

[2] At Nashville General Hospital, Plaintiff was supposed to be treated for both the ganglionic cyst and the Achilles tendon, however, Plaintiff's Achilles tendon was the only issue discussed. Aff. of Emmanuel S. Trotter, at 2. Plaintiff complained of wrist discomfort on June 12, 2003, July 15, 2003, August 4, 2003, and August 9, 2003; however, in Plaintiff's response opposing summary judgment, he admitted that he refused medical treatments related to his ganglionic cyst. Plaintiff's Summary Judgment Response, at 6; Aff. of Emmanuel S. Trotter, at 2.

2

rupture, and re-tear under a non-operative method of treatment. Plaintiff's prescribed treatment involved putting his leg in a cast and gradually changing his casts so that his foot would be moved into the neutral position. The initial cast was to start at Plaintiff's hip and extend to his foot. After three weeks, or around May 28, 2003, the initial cast was to be shortened below the knee. His foot would then be pulled up to the neutral position for the next six weeks.

On July 9, 2003, Plaintiff was taken to Nashville General Hospital to have his initial cast shortened. Plaintiff's cast was replaced by a short-leg plantar flexed cast. Plaintiff was returned to NWCX with a medical order to return in three weeks for further treatment.

Plaintiff's initial cast was on his leg for a total of nine weeks. Defendants state that the delay was caused by a "delay in forwarding the appropriate paperwork to facilitate the return specialist visit, which has resulted in the full cast staying on longer than originally intended. This paperwork was forwarded on 6.17.03 and a request for urgent appointment was included." Letter from Samantha Phillips, Health Administrator, TDOC Northwest Correctional Complex, June 26, 2003. A return visit to Nashville General Hospital was ordered the next day, however, Plaintiff did not return until July 9, 2003. During this nine-week period, Plaintiff complained to the clinic at NWCX of extreme pain, swelling, and stiffness in his right knee and foot. Plaintiff also complained of difficulty holding his crutches because of the pain caused by the ganglionic cyst in his wrist and he stated that he fell due to the numbness in his hand.

3

On July 22, 2003, Plaintiff complained of pain and swelling above and/or around the right knee and a knot in his upper right thigh. Sarah Quintere, L.P.N. at NWCX, observed that the area around Plaintiff's right knee was extremely painful to the touch and recommended alternating applications of heat and ice packs.

On July 28, 2003, Plaintiff was called to the clinic at NWCX and was reassessed by Amanda Collins. Collins noted that Plaintiff had complained of a knot in his thigh since his cast was shortened, he had tenderness in his upper leg and knee area. Collins also recommended alternating heat and ice applications.

On August 6, 2003, Plaintiff was returned to Nashville General Hospital. Plaintiff's shortened leg brace was removed and he was placed in a walker brace for a recommended six weeks.

On August 22, 2003, Plaintiff returned to the clinic at NWCX and complained of pain and swelling in the right knee. Plaintiff was prescribed Ibuprofen to reduce pain and swelling. Plaintiff later complained that the Ibuprofen was ineffective and was switched to Naproxen. The prescription stated that the medication was only to be taken with meals but did not instruct Plaintiff as to how much or how often it should be taken. Plaintiff later reported problems of severe abdominal pain, dizziness, and bloody bowel movements as a result of taking Naproxen. Plaintiff was prescribed other medications to help with any side effects that may have been caused by the Naproxen.

On August 29, 2003, Plaintiff signed an against medical advice document, which

4

stated that he refused to be transferred back to Deberry Special Needs Facility. He was subsequently transferred back to Nashville General Hospital.

Plaintiff filed this suit claiming violation of his Eighth Amendment right to be free from cruel and unusual punishment as well as various state law claims. Plaintiff states that as a result of Defendants' deliberate indifference to is medical needs, he has suffered increased pain and suffering and new debilitating injuries to his right knee and foot. Aff. of Emmanuel S. Trotter, at 3.

## II. Summary Judgment Standard

Motions for summary judgment are governed by Fed. R. Civ. P. 56. If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Fed. R. Civ. P. 56(c). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The opposing party may not rest upon the pleadings but must go beyond the pleadings and "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 323.

"If the defendant . . . moves for summary judgment . . . based on the lack of proof of a material fact, . . . [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find

for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  However, the court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter but only to determine whether there is a genuine issue for trial. Id. at 249.  Rather, "[t]he inquiry on a summary judgment motion . . . is . . . 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson, 477 U.S. at 251-52).  Doubts as to the existence of a genuine issue for trial are resolved against the moving party.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970).

### III. Eighth Amendment Claim

Plaintiff claims that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment because they acted with deliberate indifference to his serious medical needs by intentionally causing a delay in the execution of his prescribed medical treatment.  Defendants argue that they are entitled to judgment as a matter of law because they were not deliberately indifferent to Plaintiff's medical needs and that Plaintiff has failed to establish that CMS' policies or customs caused any deprivation.

### 1. Deliberate Indifference

The Eighth Amendment prohibits cruel and unusual punishment.  See generally Wilson v. Seiter, 501 U.S. 294 (1991).  The Eighth Amendment proscription on cruel and unusual punishment prohibits prison authorities from displaying deliberate indifference to

6

the serious medical needs of prisoners, because such indifference constitutes the

"unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976).

"[D]eliberate indifference to one's needs for medical attention suffices for a claim under 42

U.S.C. § 1983." Blackmore v. Kalamazoo Co., 390 F.3d 890, 895-86 (6th Cir. 2004). The

test to determine whether Defendants acted with "deliberate indifference" has an objective

and subjective component. See Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000).

> The objective component requires an inmate to show that the alleged
> deprivation is "sufficiently serious." As the Supreme Court explained in
> *Farmer*, "The inmate must show that he is incarcerated under conditions
> posing a substantial risk of serious harm." To satisfy the subjective
> component, an inmate must show that prison officials had "a sufficiently
> culpable state of mind."

Id. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "This subjective component

should be determined in light of the prison authorities' current attitudes and conduct.

Deliberate indifference entails something more than mere negligence, but can be satisfied

by something less than acts or omissions for the very purpose of causing harm or with

knowledge that harm will result." Blackmore, 390 F.3d at 896-97 (citations omitted); see

Helling v. McKinney, 509 U.S. 25, 36 (1993); Farmer, 511 U.S. at 835, 837. "Knowledge

of the asserted serious needs or of circumstances clearly indicating the existence of such

needs, is essential to a finding of deliberate indifference." Horn v. Madison Co. Fiscal

Court, 22 F.3d 653, 660 (6th Cir. 1994).

### a. "Sufficiently serious" medical need

In the present case, Plaintiff has failed to demonstrate that the alleged deprivation was sufficiently serious. Plaintiff admits that he received treatment for his torn Achilles tendon, thus, he has failed to allege that he was deprived of medical care. Within one week of his injury, Plaintiff was seen by the clinic at NWCX, referred to an off-site specialist to treat his injury, and had an M.R.I. taken of his right leg. Plaintiff was given the option of surgery or a non-operational method to heal his injury and chose the non-operative method while fully aware of potential complications. Further, Plaintiff presented evidence that complications related to his treatment were addressed by the clinic at NWCX. He was given medications and was advised to apply heat and ice packs to reduce swelling and he was allowed to use the handicap showers. Finally, Plaintiff refused certain medical services. As a result, Plaintiff fails to satisfy the objective component because he did not suffer from a serious medical need.

### b. "Sufficiently culpable state of mind"

Plaintiff has also failed to demonstrate that Defendants had a sufficiently culpable state of mind. Plaintiff received medical care for his torn Achilles tendon and, while he may be dissatisfied with the quality of care that he received, the treatment provided by Defendants did not fall below the applicable standard of care. Although Defendants did delay in ordering Plaintiff to return to Nashville General Hospital to have his initial cast removed, Plaintiff has failed to present any evidence that Defendant was more than merely

8

negligent.  This is a case in which Plaintiff merely disagrees with the treatment which he received.  Such disagreement between Plaintiff and a medical practitioner as to the level of care required generally is insufficient to establish the deliberate indifference required for an Eighth Amendment violation.  See Estelle v. Gamble, 429 U.S. 97, 107 (1976).

> Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  As such, Plaintiff has not satisfied the subjective component of the Farmer test.

  2. Defendant's Liability

  A municipal defendant cannot be held liable under § 1983 on the basis of *respondeat superior*.  There must be a showing that the constitutional violation stems from the enforcement of a governmental policy or custom.  Monell v. Department of Soc. Serv., 436 U.S. 658, 691 & 694 (1978).  Thus, a local governmental entity, such as a city or a county, "is not vicariously liable under § 1983 for the unconstitutional conduct of its agents:  It is only liable when it can be fairly said that the city itself is the wrongdoer."  Collins v. City of Harker Heights, Tex., 503 U.S. 115, 122 (1992).  This requires a showing that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."  Board of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997).

  In the present case, Plaintiff fails to demonstrate that a CMS policy deprived him of his constitutional rights.  In his "motion" opposing summary judgment, Plaintiff states that

pursuant to TDOC 113.04 § VI(c)(1)-(2), approval for specialty consultations must be obtained from the health services contractor according to their guidelines.[3]   In addition, Plaintiff submits as evidence various job descriptions of CMS personnel to establish that it is within their job duties to respond timely to outpatient issues.   However, Plaintiff's arguments fail because the policies and procedures that he references were not the "moving force" behind his alleged injury.   In contrast, these policies were put in place to secure Plaintiff's right to receive medical care while incarcerated.   Plaintiff also fails to argue that any custom of CMS personnel caused his alleged constitutional deprivation.   Consequently, Plaintiff has failed to establish that a CMS policy or custom violated his Eighth Amendment right to be free from cruel and unusual punishment.

Because Plaintiff has failed to establish that Defendants' conduct met the deliberate indifference standard or that a CMS policy or custom caused his alleged deprivation, Defendants are entitled to judgment as a matter of law as to Plaintiff's Eighth Amendment claim.

## IV. State Law Claims

Plaintiff asserts state law claims of medical malpractice/battery, intentional infliction of emotional distress, negligent infliction of emotional distress, gross negligence, and negligence.   Under certain circumstances, a federal district court may decline supplemental jurisdiction over a state law claim even if jurisdiction would otherwise be proper.   Pursuant

---

[3] While Plaintiff cites TDOC 113.04 § VI(c)(1)-(2) and includes TDOC 113.04 as evidence, he has omitted § VI(c)(1)-(2).

to 28 U.S.C. § 1367(c):

> The district courts may decline supplemental jurisdiction over a claim under subsection (a) if–
>
> > (3)   the district court has dismissed all claims over which it has original jurisdiction,....

§ 1367(c)(3). As summary judgment has been granted in favor of Defendants on Plaintiff's § 1983 claim, the court declines to accept supplemental jurisdiction over Plaintiff's state law claims.

### V. Conclusion

For the foregoing reasons, Defendants James H. Smith and CMS are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claim. In addition, Plaintiff's state law claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3).

IT IS SO ORDERED.


JAMES D. TODD
UNITED STATES DISTRICT JUDGE

3 May 2005
DATE

11

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 66 in case 1:04-CV-01075 was distributed by fax, mail, or direct printing on May 5, 2005 to the parties listed.

---

Jennifer R. Bailey
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN 37202--020

Stephen G. Smith
THE HARDISON LAW FIRM
119 S. Main St.
Ste. 300
Memphis, TN 38103

Jerry O. Potter
THE HARDISON LAW FIRM
119 S. Main St.
Ste. 300
Memphis, TN 38103

Emmanuel S. Trotter
NWCC-TIPTONVILLE
121642
960 State Route 212
Tiptonville, TN 38079

Honorable James Todd
US DISTRICT COURT