IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| EMMANUEL S. TROTTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 1-04-1075-T-An |
| | ) | |
| SAMANTHA PHILLIPS, | ) | |
| JAMES H. SMITH, M.D., and | ) | |
| CORRECTIONAL MEDICAL | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER GRANTING DEFENDANT PHILLIPS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Emmanuel S. Trotter, an inmate at the Northwest Correctional Complex ("NWCX"), filed a complaint, *pro se*, pursuant to 42 U.S.C. § 1983 alleging that Defendants demonstrated a deliberate indifference to his serious medicals needs by delaying in arranging and/or providing his prescribed medical care for a complete tear of his right Achilles tendon. Plaintiff also asserts various state law claims. Defendants James H. Smith and Correctional Medical Services ("CMS") filed a motion for summary judgment, which was granted. Before the court is Defendant Samantha Phillips' motion for summary judgment. Plaintiff did not respond. For the following reasons, Phillip's motion is GRANTED.

This document entered on the docket sheet in compliance with Rule 58 and/or 79 (a) FRCP on 6/8/2005

I. Facts

On May 1, 2003, Plaintiff ruptured his right Achilles tendon while playing basketball at the Northwest Correctional Complex. Plaintiff asked for medical care and was taken to Baptist Memorial Hospital in Union City, Tennessee on May 6, 2003. Dr. James H. Wolfe performed a magnetic resonance imaging ("M.R.I.") on Plaintiff's right lower leg. The M.R.I. showed a complete tear of Plaintiff's right Achilles tendon. Dr. James H. Smith, a physician for CMS at NWCX, ordered Plaintiff to be sent to Nashville General Hospital to treat his injury.[1] Plaintiff also told Dr. Smith of pain and numbness in his right hand. Dr. Smith informed Plaintiff that he believed that his pain was caused by a ganglion cyst and was urgent.

On May 7, 2003, Plaintiff was taken to Nashville General Hospital and was seen by Dr. Mauro Giordani.[2] Plaintiff was given the choice of surgery to repair his tendon; however, he elected to enter non-operative treatment. Plaintiff was advised that even if the prescribed treatment was executed properly, there would be a risk of poor healing, re-

---

[1] Pursuant to TDOC Policy # 113.12, a "[c]onsulation by a physician specialist or other health professional, as well as any prescribed treatment, shall be made available when it is determined that an inmate requires specialty care beyond the training or expertise of the institutional health care staff or institutional resources."

[2] At Nashville General Hospital, Plaintiff was supposed to be treated for both the ganglionic cyst and the Achilles tendon, however, Plaintiff's Achilles tendon was the only issue discussed. Aff. of Emmanuel S. Trotter, at 2. Plaintiff complained of wrist discomfort on June 12, 2003, July 15, 2003, August 4, 2003, and August 9, 2003; however, in Plaintiff's response opposing summary judgment, he admitted that he refused medical treatments related to his ganglionic cyst. Plaintiff's Summary Judgment Response, at 6; Aff. of Emmanuel S. Trotter, at 2.

rupture, and re-tear under a non-operative method of treatment. Plaintiff's prescribed treatment involved putting his leg in a cast and gradually changing his casts so that his foot would be moved into the neutral position. The initial cast was to start at Plaintiff's hip and extend to his foot. After three weeks, or around May 28, 2003, the initial cast was to be shortened below the knee. His foot would then be pulled up to the neutral position for the next six weeks.

On July 9, 2003, Plaintiff was taken to Nashville General Hospital to have his initial cast shortened. Plaintiff's cast was replaced by a short-leg plantar flexed cast. Plaintiff was returned to NWCX with a medical order to return in three weeks for further treatment.

Plaintiff's initial cast was on his leg for a total of nine weeks. Phillips, an employee of Northwest Community Services Agency as the Health Administrator for NWCX, stated that the delay was caused by a "delay in forwarding the appropriate paperwork to facilitate the return specialist visit, which has resulted in the full cast staying on longer than originally intended. This paperwork was forwarded on 6.17.03 and a request for urgent appointment was included." Letter from Samantha Phillips, June 26, 2003. Although Phillips wrote the letter to Plaintiff, she states that she played no role in facilitating transfers, consultation visits, or care, other than to supervise the employees who coordinate the transfers and consultation visits. Aff. of Samantha Phillips at ¶ 1-2. In addition, she states that she has no authority to order a patient transferred for a consultation to an outside physician. Aff. of Samantha Phillips at ¶ 1-2. Phillips states that she has no direct patient care responsibilities

3

and is neither a nurse nor a doctor. Aff. of Samantha Phillips at ¶ 1. Finally, Phillips states that she has never provided patient care for Plaintiff and that she has never spoken to or corresponded with Plaintiff--with the exception of the June 26th letter. Aff. of Samantha Phillips at ¶ 1-2.

A return visit to Nashville General Hospital was ordered the day after Phillips wrote the letter, however, Plaintiff did not return until July 9, 2003. During this nine-week period, Plaintiff complained to the clinic at NWCX of extreme pain, swelling, and stiffness in his right knee and foot. Plaintiff also complained of difficulty holding his crutches because of the pain caused by the ganglionic cyst in his wrist and he stated that he fell due to the numbness in his hand.

On July 22, 2003, Plaintiff complained of pain and swelling above and/or around the right knee and a knot in his upper right thigh. Sarah Quintere, L.P.N. at NWCX, observed that the area around Plaintiff's right knee was extremely painful to the touch and recommended alternating applications of heat and ice packs.

On July 28, 2003, Plaintiff was called to the clinic at NWCX and was reassessed by Amanda Collins. Collins noted that Plaintiff had complained of a knot in his thigh since his cast was shortened, he had tenderness in his upper leg and knee area. Collins also recommended alternating heat and ice applications.

On August 6, 2003, Plaintiff was returned to Nashville General Hospital. Plaintiff's shortened leg brace was removed and he was placed in a walker brace for a recommended

4

six weeks.

On August 22, 2003, Plaintiff returned to the clinic at NWCX and complained of pain and swelling in the right knee. Plaintiff was prescribed Ibuprofen to reduce pain and swelling. Plaintiff later complained that the Ibuprofen was ineffective and was switched to Naproxen. The prescription stated that the medication was only to be taken with meals but did not instruct Plaintiff as to how much or how often it should be taken. Plaintiff later reported problems of severe abdominal pain, dizziness, and bloody bowel movements as a result of taking Naproxen. Plaintiff was prescribed other medications to help with any side effects that may have been caused by the Naproxen.

On August 29, 2003, Plaintiff signed an against medical advice document, which stated that he refused to be transferred back to Deberry Special Needs Facility. He was subsequently transferred back to Nashville General Hospital.

Plaintiff filed this suit claiming violation of his Eighth Amendment right to be free from cruel and unusual punishment as well as various state law claims. Plaintiff states that as a result of Defendants' deliberate indifference to is medical needs, he has suffered increased pain and suffering and new debilitating injuries to his right knee and foot. Aff. of Emmanuel S. Trotter, at 3.

5

## II. Summary Judgment Standard

Motions for summary judgment are governed by Fed. R. Civ. P. 56. If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Fed. R. Civ. P. 56(c). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The opposing party may not rest upon the pleadings but must go beyond the pleadings and "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 323.

"If the defendant . . . moves for summary judgment . . . based on the lack of proof of a material fact, . . . [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). However, the court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter but only to determine whether there is a genuine issue for trial. Id. at 249. Rather, "[t]he inquiry on a summary judgment motion . . . is . . . 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson, 477 U.S. at 251-52). Doubts as to

the existence of a genuine issue for trial are resolved against the moving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970).

### III. Eleventh Amendment Immunity

Phillips first argues that summary judgment should be granted because the Eleventh Amendment to the United States Constitution, the doctrine of sovereign immunity, and Article 1, § 17 of the Tennessee Constitution bar any § 1983 claim made against her in her official capacity.

The Eleventh Amendment provides a state, and its agencies and departments, with immunity from suits brought in federal court by its own citizens as well as by citizens of another state. Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Employees v. Missouri Dept. of Pub. Health and Welfare, 411 U.S. 279, 280 (1973). There are exceptions to this general rule where Congress statutorily abrogates Eleventh Amendment immunity through clear and unmistakable language, Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 242 (1985), and where a state expressly waives its sovereign immunity by specifying its intention to subject itself to suit in federal court. Id. at 241; Pennhurst, 465 U.S. at 90. With regard to actions under § 1983, the Supreme Court has held that the statute does not abrogate the Eleventh Amendment immunity of the states and their agencies and departments. Quern v. Jordan, 440 U.S. 332, 340-45 (1979). In addition, Tennessee has not waived its sovereign immunity with respect to suits under § 1983. See

7

Berndt v. State of Tennessee, 796 F.2d 879, 881 (6th Cir. 1986); Gross v. University of Tennessee, 620 F.2d 109, 110 (6th Cir. 1980); American Civil Liberties Union v. State of Tennessee, 496 F. Supp. 218, 220 (M.D. Tenn. 1980). Further, suits against state officials in their official capacities are, in essence, suits against the state itself. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989); Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Brandon v. Holt, 469 U.S. 464, 471 (1985). Tennessee statute defines an employee of a community service agency as a "state employee." Tenn. Code Ann. § 8-42-101(3)(A).

In the present case, Plaintiff's claims for damages is against Phillips, an employee of the Northwest Community Services Agency as a Health Administrator of NWCX, in her official capacity. The Northwest Community Services Agency is a community services agency, thus, Plaintiff is a "state employee" as defined by Tenn. Code Ann. § 8-42-101(3)(A). As such, Phillips is entitled to Eleventh Amendment immunity from Plaintiff's § 1983 claim.

## IV. Eighth Amendment Claim

Plaintiff claims that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment because they acted with deliberate indifference to his serious medical needs by intentionally causing a delay in the execution of his prescribed medical treatment. Phillips argues that she is entitled to judgment as a matter of law because: (1) Defendants were not deliberately indifferent to Plaintiff's medical needs, and (2) she played

no role in treating Plaintiff or arranging for his health care.

### 1. Deliberate Indifference

The Eighth Amendment prohibits cruel and unusual punishment. See generally Wilson v. Seiter, 501 U.S. 294 (1991). The Eighth Amendment proscription on cruel and unusual punishment prohibits prison authorities from displaying deliberate indifference to the serious medical needs of prisoners, because such indifference constitutes the "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "[D]eliberate indifference to one's needs for medical attention suffices for a claim under 42 U.S.C. § 1983." Blackmore v. Kalamazoo Co., 390 F.3d 890, 895-86 (6th Cir. 2004). The test to determine whether Defendants acted with "deliberate indifference" has an objective and subjective component. See Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000).

> The objective component requires an inmate to show that the alleged deprivation is "sufficiently serious." As the Supreme Court explained in *Farmer*, "The inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." To satisfy the subjective component, an inmate must show that prison officials had "a sufficiently culpable state of mind."

Id. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "This subjective component should be determined in light of the prison authorities' current attitudes and conduct. Deliberate indifference entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Blackmore, 390 F.3d at 896-97 (citations omitted); see Helling v. McKinney, 509 U.S. 25, 36 (1993); Farmer, 511 U.S. at 835, 837. "Knowledge

9

of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." Horn v. Madison Co. Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994).

### a. "Sufficiently serious" medical need

In the present case, Plaintiff has failed to demonstrate that the alleged deprivation was sufficiently serious. Plaintiff admits that he received treatment for his torn Achilles tendon, thus, he has failed to allege that he was deprived of medical care. Within one week of his injury, Plaintiff was seen by the clinic at NWCX, referred to an off-site specialist to treat his injury, and had an M.R.I. taken of his right leg. Plaintiff was given the option of surgery or a non-operational method to heal his injury and chose the non-operative method while fully aware of potential complications. Further, Plaintiff presented evidence that complications related to his treatment were addressed by the clinic at NWCX. He was given medications and was advised to apply heat and ice packs to reduce swelling and he was allowed to use the handicap showers. Finally, Plaintiff refused certain medical services. As a result, Plaintiff fails to satisfy the objective component because he did not suffer from a serious medical need.

### b. "Sufficiently culpable state of mind"

Plaintiff has also failed to demonstrate that Defendants had a sufficiently culpable state of mind. Plaintiff received medical care for his torn Achilles tendon and, while he may be dissatisfied with the quality of care that he received, the treatment provided by

10

Defendants did not fall below the applicable standard of care. Although Defendants did delay in ordering Plaintiff to return to Nashville General Hospital to have his initial cast removed, Plaintiff has failed to present any evidence that Defendant was more than merely negligent. This is a case in which Plaintiff merely disagrees with the treatment which he received. Such disagreement between Plaintiff and a medical practitioner as to the level of care required generally is insufficient to establish the deliberate indifference required for an Eighth Amendment violation. See Estelle v. Gamble, 429 U.S. 97, 107 (1976).

> Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). As such, Plaintiff has not satisfied the subjective component of the Farmer test.

As to Phillips' involvement in Plaintiff's treatment, Plaintiff has failed to establish that Phillips had a sufficiently culpable state of mind. Phillips was a Health Administrator for NWCX. Phillips states that her position does not involve any patient care responsibilities. She states that she does not receive orders from physicians or facilitate inmate transfers or consultation visits. Phillips maintains that her role is only supervisory. In addition, Phillips states that she played no role in Plaintiff's treatment with the exception of responding to his grievance on one occasion. Consequently, Plaintiff has failed to establish that Phillips had the requisite state of mind in regard to delaying his treatment.

Because Plaintiff has failed to establish that Phillips' conduct met the deliberate

11

indifference standard, Phillips is entitled to judgment as a matter of law as to Plaintiff's Eighth Amendment claim.

## V. State Law Claims

Plaintiff asserts state law claims of medical malpractice/battery, intentional infliction of emotional distress, negligent infliction of emotional distress, gross negligence, and negligence. Under certain circumstances, a federal district court may decline supplemental jurisdiction over a state law claim even if jurisdiction would otherwise be proper. Pursuant to 28 U.S.C. § 1367(c):

> The district courts may decline supplemental jurisdiction over a claim under subsection (a) if–
> 
>   (3)   the district court has dismissed all claims over which it has original jurisdiction,....

§ 1367(c)(3). As summary judgment has been granted in favor of Phillips on Plaintiff's § 1983 claim, the court declines to accept supplemental jurisdiction over Plaintiff's state law claims.

## VI. Conclusion

For the foregoing reasons, Phillips is entitled to immunity under the Eleventh Amendment. Assuming that Phillips were not immune, however, she is entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claim. In addition, Plaintiff's state law claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3). Finally, because all Defendants

have been dismissed from this case, all *in limine* motions filed in conjunction with this case are also dismissed. The clerk shall enter judgment in accordance with this order.

IT IS SO ORDERED.

_____
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

7 June 2005
_____
DATE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 68 in case 1:04-CV-01075 was distributed by fax, mail, or direct printing on June 8, 2005 to the parties listed.

---

Jennifer R. Bailey
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN 37202--020

Emmanuel S. Trotter
NWCC-TIPTONVILLE
121642
960 State Route 212
Tiptonville, TN 38079

Stephen G. Smith
THE HARDISON LAW FIRM
119 S. Main St.
Ste. 300
Memphis, TN 38103

Jerry O. Potter
THE HARDISON LAW FIRM
119 S. Main St.
Ste. 300
Memphis, TN 38103

Honorable James Todd
US DISTRICT COURT